# **EXHIBIT D**

THIS NOTE AND THE SECURITIES ISSUABLE UPON CONVERSION OF THIS NOTE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED OR UNLESS SOLD PURSUANT TO RULE 144 OF SUCH ACT. THIS NOTE AND THE SECURITIES ISSUABLE UPON CONVERSION OF THIS NOTE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED OR UNLESS SOLD PURSUANT TO RULE 144 OF SUCH ACT. THIS NOTE AND THE SECURITIES ISSUABLE UPON CONVERSION OF THIS NOTE ARE SUBJECT TO CERTAIN RESTRICTIONS SET FORTH IN THE INVESTOR RIGHTS AGREEMENT, A COPY OF WHICH MAY BE OBTAINED AT THE CORPORATE HEADQUARTERS OF THE COMPANY.

ALL INDEBTEDNESS EVIDENCED BY THIS NOTE IS SUBORDINATED TO OTHER INDEBTEDNESS PURSUANT TO, AND TO THE EXTENT PROVIDED IN, AND IS OTHERWISE SUBJECT TO THE TERMS OF, THE SUBORDINATION AGREEMENT DATED AS OF AUGUST 17, 2009 BY AND AMONG SHIELD TECHNOLOGIES CORPORATION, GE ASSET MANAGEMENT INCORPORATED, GENERAL ELECTRIC PENSION TRUST, COUNTERPOINT VENTURES FUND, LP, and DELAWARE PLACE BANK.

## AMENDED AND RESTATED

## SENIOR SECURED CONVERTIBLE PROMISSORY NOTE

## SHIELD TECHNOLOGIES CORPORATION

$1,250,000

Chicago, Illinois                                             August 17, 2009

      WHEREAS, General Electric Pension Trust (the "Holder"), Counterpoint Ventures Fund LP (together with the Holder, the "Noteholders"), Shield Technologies Corporation, a Delaware corporation (the "Company"), Samuel Wm. Sax and Thomas F. Sax have entered into the Note Purchase Agreement, dated as of November 17, 2004, as modified and supplemented and in effect from time to time (the "Note Purchase Agreement");

      WHEREAS, the Holder has loaned to the Company the sum of $1,250,000 upon the terms and conditions contained in a senior secured convertible promissory note dated November 17, 2004 (the "Note") and in the Note Purchase Agreement;

IN WITNESS WHEREOF, the Company has caused this Restated Note to be executed in its corporate name by its duly authorized officer as of the day and year first above written.

SHIELD TECHNOLOGIES CORPORATION

By: _____
Name: Thomas Fredecli SAR
Title: Vu Churmu



WHEREAS, the Noteholders, GE Asset Management Incorporated, a Delaware corporation as agent for the Noteholders, and the Company have entered into the Security Agreement, dated as of November 17, 2004, as modified and supplemented and in effect from time to time (the "Security Agreement"), pursuant to which the Company has granted to the Holder a security interest in Collateral (as defined therein) to secure the Company's obligations under the Note, certain other notes issued to Counterpoint Ventures Fund LP on November 17, 2004 (the "Counterpoint Notes") and other notes ("Additional Notes" and, together with the Restated Note (as defined below) and the Counterpoint Notes, but excluding the Note, the "Notes") issued pursuant to the Note Purchase Agreement;

WHEREAS, the parties to the Note wish to modify certain terms of the Note; and

WHEREAS, the parties to the Note wish to amend and restate the terms of the Note to reflect such modifications with the intent that this Amended and Restated Senior Security Convertible Promissory Note (the "Restated Note") replace the Note in its entirety.

NOW THEREFORE, the Company agrees as follows:

FOR VALUE RECEIVED, the Company promises to pay to the Holder the aggregate principal amount of this Restated Note with interest from the date hereof, at the rate of ten and a half percent (10.5%) per annum (unless there is a default on the payment of interest, at which time the interest rate will increase, if not paid within ten (10) days, to fourteen percent (14%) until cured) on the unpaid principal amount of this Note until paid, both principal and interest being payable in lawful money of the United States of America, at c/o GE Asset Management, Incorporated, 3001 Summer Street, Stamford, Connecticut 06905, or at such place as the Holder may designate in writing. The obligations of the Company under this Restated Note are secured as set forth in the Security Agreement. This Restated Note replaces in its entirety one of the Notes referred to in the Note Purchase Agreement. Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Note Purchase Agreement. This Restated Note shall have a "Demand Date" of November 17, 2011. Subject to the future rights of the Holders in the event that an Event of Default has occurred and is continuing, the principal and interest on this Note shall be due and payable as follows:

(i) The entire unpaid balance shall be due and payable in full, upon a demand request by the Holder, at any time on or after the Demand Date;

(ii) The entire unpaid balance shall be due and payable in full on November 17, 2014 (the "Due Date");

(iii) Interest shall be due and payable at a rate per annum equal to ten and one half percent (10.5%), which interest shall accrue quarterly and be payable in arrears. Such interest shall be due upon the earlier to occur of (A) the date payment is due pursuant to a demand made as described, in Section 1.1(d) of the Note Purchase Agreement, except that the Demand Date shall be November 17, 2011, (B) the Due Date or (C) an Event of Default (as defined in the Note Purchase Agreement); provided, however, that the Company at its discretion may make

093551 019171
P036629000000839

annual payments of interest accrued on the Notes before such payments are otherwise due pursuant to the foregoing, such annual payments to be made, if at all, on or before December 31 of successive years during which any Notes are outstanding. All computations of interest payable hereunder shall be on the basis of a 365/366-day year and actual days elapsed in the period of which such interest is payable.

(iv)  The principal under this Restated Note may not be prepaid without the written consent of the Holder prior to the Demand Date.

(v)  If the Company elects to repay the principal under this Restated Note and all interest accrued hereon after the Demand Date and prior to the Due Date, the Company shall provide the Holder with ten (10) days prior written notice and the Holder shall then have the right to convert its Restated Note as described in Section 1 below.

1. Conversion.

(a) Optional Conversion. All or any portion of principal and accrued interest under this Restated Note may, at any time and at the sole option of the Holder, be converted into shares of the Common Stock of the Company (the "Conversion Shares"). Upon such conversion, the Holder shall receive the number of shares as calculated in accordance with Section 1(c) below. The Company shall not issue fractional shares but shall pay the dollar equivalent of any fractional shares on such closing date.

(b) Conversion by Company. All amounts of principal and accrued interest under this Restated Note may be converted into shares of the Common Stock of the Company, as calculated in accordance with Section 1(c) below, by the Company in its discretion at any time on or after the effectiveness of a firm-commitment initial public offering of Common Stock of the Company that (i) represents up to twenty percent (20%) of the fully-diluted outstanding Common Stock of the Company at such time, and (ii) generates at least $20 million in gross proceeds for the Company.

(c) Conversion Rate. Each $250,000 in value of principal and accrued and unpaid interest on the Notes (including any Notes issued in addition to this Restated Note) will be convertible into shares of Common Stock of the Company representing 2.5% (the "Conversion Rate"), or a corresponding pro rata portion, of the Company's total outstanding securities at the time of conversion, calculated on a fully-diluted basis. For each $250,000 in value available as an Unfunded Commitment (as defined in the Note Purchase Agreement), which has not been drawn by the Company before March 31, 2007, the Conversion Rate with respect to any outstanding Notes and unpaid interest will be increased to the extent required to cause additional shares of Common Stock of the Company representing in the aggregate 1.25% of the Company's outstanding securities at the time of conversion, on a fully-diluted basis to be issuable upon the conversion of such outstanding Notes and unpaid interest (the "Adjusted Conversion Ratio"). (As an example: if the Holder has Notes with a principal value of $2 million and an Unfunded Commitment of $1 million, assuming all accrued interest is paid on such Notes, the conversion of the $2 million of outstanding Notes into Common Stock would be



adjusted to be convertible into shares of Common Stock representing 25% of the Company's outstanding securities, at such time, on a fully-diluted basis (($2,000,000/$250,000) x 2.5% plus ($1,000,000/$250,000) x 1.25%)).

(d) <u>Conversion Mechanism</u>. Subject to the provisions of this Section 1, this Restated Note may be converted in full or in part by the Holder, by giving written notice (the "Conversion Notice") to the Company of the exercise of such right and stating the principal amount being converted and the name or names in which the shares of Common Stock are to be issued and the address to which such shares shall be delivered. The date on which the Holder delivers the Conversion Notice to the Company shall be the conversion date (the "Conversion Date"). Within five business days after the Conversion Date, the Holder shall deliver to the Company Notes representing the principal amount so converted and the Company shall deliver to the Holder a certificate or certificates evidencing the number of shares of Common Stock issuable upon the conversion in accordance with the terms of the Conversion Notice. The person in whose name the certificate is registered shall be treated as a stockholder of the Company on and after the Conversion Date.

(e) <u>Share Reserve</u>. The Company shall from time to time reserve a sufficient number of Shares to permit the conversion of this Restated Note. All Shares delivered upon conversion of this Restated Note shall be fully paid and nonassessable and shall be free from preemptive rights and free of any lien or adverse claim. The Company will comply with all federal and state securities laws regulating the offer and delivery of Common Stock upon conversion of this Restated Note, if any. The Holder shall also comply with all federal and state securities laws with respect to its conversion of the Restated Note.

(f) <u>Partial Conversion</u>. Upon a partial conversion of this Restated Note, the Company at its expense shall forthwith issue and deliver to Holder a new Restated Note in principal amount or amounts equal to the unpaid and unconverted principal amount of this Restated Note.

2. <u>Default</u>. In the case of the occurrence of an Event of Default (as defined in the Note Purchase Agreement), the Holder may, without notice, declare the unpaid principal and interest on this Restated Note, and all other obligations of the Company to the Holder, at once due and payable, whereupon such principal, interest and other obligations shall become at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. Except as otherwise provided with respect to certain defaults with respect to payment of interest as provided in Section 1.1(e)(ii) of the Note Purchase Agreement, the principal of this Restated Note and any part thereof, and accrued interest, if any, shall bear interest at the rate of fourteen percent (14%) per annum after such Event of Default until paid.

3. <u>Waiver of Certain Rights</u>. Subject to any applicable notice periods, the Company hereby waives protest, presentment, notice of dishonor, and notice of acceleration of maturity and agrees to continue to remain bound for the payment of principal, interest and all other sums due under this Restated Note by way of any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes and agree that the same may be without notice or consent of any of them.

4. <u>Enforcement</u>. Following an Event of Default the Holder may employ an attorney to enforce the Holder's rights and remedies and the maker, principal, surety, guarantor and endorsers of this Restated Note hereby agree to pay to the Holder reasonable attorneys' fees, plus all other reasonable expenses incurred by the Holder in exercising any of the Holder's rights and remedies under this Restated Note, the Note Purchase Agreement, the Investor Rights Agreement and the Security Agreement. The rights and remedies of the Holder as provided in this Restated Note shall be cumulative and may be pursued singly, successively, or together against any other funds, property or security held by the Holder for payment or security, in the sole discretion of the Holder. The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any of them at another time.

5. <u>No Shareholder Rights</u>. Nothing contained in this Restated Note shall be construed as conferring upon the Holder or any other person the right to vote or to consent or to receive notice as a shareholder of the Company.

6. <u>Transfers</u>. Except as otherwise provided herein or in the Note Purchase Agreement, a Noteholder may transfer this Restated Note in whole or in part without the consent of any Noteholder or the Company. Upon surrender of this Restated Note at the principal executive office of the Company or the office of any paying agent located in the United States designated by the Company on behalf of the Company for registration of transfer or exchange (and in the case of a surrender for registration of transfer, accompanied by a written instrument of transfer duly executed by the registered holder of this Restated Note or such holder's attorney duly authorized in writing and accompanied by the address for notices of each transferee of this Restated Note or part thereof), the Company shall execute and deliver (within three Business Days), at the Company's expense (except as provided below), one or more new Notes (as requested by the Holder) in exchange therefor, in an aggregate principal amount equal to the unpaid principal amount of the surrendered Restated Note. Each such new Restated Note shall be payable to such person as the Holder may request meeting the requirements set forth in the last sentence of this Section 6. Each such new Restated Note shall be dated and bear interest from the date to which interest shall have been paid on the surrendered Restated Note or dated the date of the surrendered Restated Note if no interest shall have been paid thereon. Each new Restated Note shall bear the legend set forth herein. The Company may require payment by such holder or transferee of a sum sufficient to cover any stamp tax or governmental charge imposed in respect of any such transfer of the Restated Note. The Restated Note shall not be transferred in denominations of less than $100,000, provided that if necessary to enable the registration of transfer by Holder of its entire holding of Notes, one Restated Note may be in a denomination of less than $100,000. Any transferee, by its acceptance of a Restated Note registered in its name (or the name of its nominee), shall be deemed to have made representations set forth in Sections 3 of the Note Purchase Agreement.

7. <u>Miscellaneous</u>. The following general provisions apply:

(a) This Restated Note, and the obligations and rights of the Company hereunder, shall be binding upon and inure to the benefit of the Company, the Holder, and their respective heirs, personal representatives, successors and assigns, except that the Company may not assign or transfer any of its rights or obligations under this Restated Note without the prior



written consent of the Holder.

(b)  Changes in or amendments or additions to this Restated Note may be made, or compliance with any term, covenant, agreement, condition or provision set forth herein may be omitted or waived (either generally or in a particular instance and either retroactively or prospectively), by a majority in interest of holders of the Notes, and Holder, by acceptance of this Restated Note, agrees to be bound by any such change, amendment or addition made in accordance herewith.

(c)  All payments shall be made in such coin and currency of the United States of America as at the time of payment shall be legal tender therein for the payment of public and private debts.

(d)  In the event that the rate of interest provided for in this Restated Note exceeds the maximum rate permitted by law, such rate of interest shall be reduced to the maximum rate of interest permitted by law.

(e)  All notices, requests, consents and demands shall be made in writing and shall be mailed by certified or registered mail, postage prepaid, return receipt requested, or delivered by reliable overnight courier service, or delivered by hand, (i) to the Company at its address set forth below and (ii) to the Holder at the registered address on file with the Company, with a copy to Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019-6099, Attention: William E. Hiller, as updated from time to time, or to such other address as may be furnished in writing to the other party hereto and shall be effective upon receipt:

If to the Company, at Shield Technologies Corporation, 181 West Madison, Suite 3900, Chicago, Illinois 60602, Attention: Samuel Sax, with a copy to Thomas F. Sax, at the same address and a copy to Barnes &Thornburg LLP, One North Wacker Drive, Suite 4400, Chicago, Illinois 60606, Attention: Leslie J. Weiss.

(f)  This Restated Note shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Illinois, excluding the application of any conflicts of laws principles which would require the application of the laws of another state.

(g)  This Restated Note shall replace the Note in its entirety.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]