# **EXHIBIT I**

LAW OFFICES
**COLLINS & COLLINS**
8 South Michigan Ave., Suite 1414
Chicago, Illinois 60603

(312) 201-8700
Fax (312) 606-0234
John.collins@collinsandcollins.com

September 16, 2011

<u>VIA EMAIL AND FIRST CLASS MAIL</u>
Peter G. Rush
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602-4207
Email: peter.rush@klgates.com

    Re:    Your letter dated September 14, 2011

Dear Mr. Rush:

    I have reviewed your letter and it is replete with errors – factual and legal:

    First, you claim to represent Shields [sic] Technologies Corporation ("Shield"). Accordingly, you owe a fiduciary obligation to Shield and not its officers. Your letter, however, is contrary to the best interests of Shield and its stockholders. Shield Acquisition Group, LLC ("SAG"), the controlling shareholder, hereby demands that you take all actions necessary to cause Shield to (i) deliver to SAG the certificate evidencing the 1151 additional shares it now owns as a result of its partial conversion of its Notes on August 8, 2011, (ii) issue and deliver to SAG the new restated Note in the amount of $483,912.50, and (iii) take all actions necessary to cause Shield to issue notice of a special meeting of stockholders at 10:00 a.m. on Friday, September 30, 2011 at Butterfield Country Club in Oak Brook, Illinois. You are further advised that you and your firm have a direct conflict of interest with Samuel Sax, Thomas Sax or James Donnelley and are to structure your communications accordingly. In your representation of Shield, you are to communicate with directors Mike Weible and Bryan Zingg or their designee and not with Samuel Sax, Thomas Sax or James Donnelley.

    Second, SAG has not accepted the erroneous, impermissible and unauthorized prepayment of the Notes. As my September 11, 2011 letter makes abundantly clear, Shield had no ability to make that payment and SAG has refused that payment. Those funds are being held in escrow at this time.

    Third, with respect to the August 22, 2011 letter referenced in your letter, on August 25, 2011, Shield was advised in writing by SAG, through one of its managers, Mike Weible, who is also a member of Shield's Board of Directors, that

Peter G. Rush
September 16, 2011
Page 2 of 4

SAG had fully complied with all applicable agreements in converting a portion of the Notes into 1151 shares of common stock of Shield. So contrary to your assertion, Shield in fact does have evidence that SAG has properly exercised its option to convert a portion of the Notes to common stock of Shield. Moreover, your statement that Shield "cannot be expected to issue any equity shares" is simply false legally and factually. As the Notes make clear, SAG's ownership of the shares of common stock in Shield occurred upon delivery of the notice of conversion on August 8, 2011; the only item to be delivered by Shield is the certificate or certificates evidencing the number of additional shares owned by SAG. The Notes expressly state that Shield's obligation to deliver to SAG these certificates is mandatory (i.e., "shall deliver") and not discretionary. The requirement that Shield "forthwith issue and deliver" the new restated Note is likewise mandatory under the express terms of the Note. (It should also be noted that the language regarding the new Note includes "issue" where delivery of the certificate(s) evidencing the shares of commons stock does not, further proving that SAG's ownership of the 1151 shares of commons stock occurred automatically upon delivery of its notice of conversion on August 8, 2011.) So, yes, Shield is "expected" to fulfill its contractual obligations and deliver the certificates and new Note as required under the terms of the Notes. More than "expected", SAG demands that this action occur immediately.

Fourth, your reliance on any statements by Mr. Donnelley is completely misplaced. Mr. Donnelley is not a Manager of SAG and has no authority to speak on behalf of SAG in any way. Also, Mr. Donnelley owns far less than 1/3 of the ownership interests in SAG and had no ability to block or veto SAG's conversion of the Notes to shares of common stock in Shield. Moreover, while investor approval of the conversion of the Notes to common stock in Shield is not required under SAG's Limited Liability Company Agreement, more than 83% of SAG's investors have approved of SAG's conversion of a portion of the Notes into 1151 shares of common stock in Shield. In other words, every SAG investor other than Mr. Donnelley and his family have approved of the conversion. You should also know that Mr. Donnelley has made inconsistent statements regarding the conversion. He previously recommended that SAG convert all of its shares, not just the part necessary to gain controlling interest in Shield. So, Shield now has further evidence that the conversion was properly authorized and exercised. SAG hereby renews its demand that Shield deliver the certificate evidencing SAG's ownership in the additional 1151 shares of common stock of Shield and issue and deliver the new Note in the amount of $483,912.50. Mr. Donnelley's actions are clearly in his personal interest and contrary to his fiduciary obligation to Shield as a member of its Board of Directors and subjecting him to litigation by Shield and SAG. You therefore have a direct conflict of interest with Mr. Donnelley and are to communicate with him accordingly.

Fifth, your reference to "securities laws" is misguided. If you read the cases you have cited in your letter you will see that they do not stand for the proposition you have asserted and are otherwise distinguishable. You should also

Peter G. Rush
September 16, 2011
Page 3 of 4

note that paragraph 7(f) of the Notes expressly states that the Notes are construed and enforced under Illinois law. You should further note that Section 2.5 of the Illinois Securities Law (815 ILCS 5/1 et seq.), which defines "sale" or "sell" states: "*A privilege to convert a security into another security **shall not be deemed a sale of such other security**, provided no consideration from the holder in addition to the surrender or cancellation of the convertible security is required to effect the conversion.*" (emphasis added). You should further note that conversion of a convertible note to shares of common stock where no commission or other remuneration is paid is exempt under §3(a)(9) of the Securities Act of 1933.

Sixth, your statement regarding Shield's "management's" beliefs are completely irrelevant with respect to Shield's contractual obligations under the Notes. The delivery of the certificate evidencing SAG's ownership of the 1151 additional shares and the issuance and delivery of the new restated Note is mandatory and Shield's "management" has no discretion; it must take this action. Further, please disclose precisely to whom you are referring when you state "Shield management." As to SAG's intentions as the majority stockholder of Shield, SAG has a direct interest in maximizing the share value of Shield and will act in furtherance of that interest. In fact, SAG converted a portion of its Notes to take controlling interest in Shield because it does not believe that Shield's current Chairman and Vice-Chairman are acting in the best interests of Shield and its stockholders – a point directly evidenced by their willful failure to deliver to SAG the certificate evidencing the 1151 shares of additional common stock and to issue and deliver the restated Note to SAG. Their willful misconduct and breach of their duties to Shield are further evidenced by their attempt to wrongfully and impermissibly prepay the Notes by more than $1,200,000 currently outstanding and then repeatedly failing to accept the return of that valuable working capital. They also have failed to issue notice of a special meeting of stockholders as required under Shield's bylaws. The actions of the Chairman and Vice-Chairman are clearly not in the best interests of the company or its stockholders.

In your last point, you make reference to Tom Sax ceasing to be the Secretary of Shield. It is unclear why you have raised this point. My letter, as you note, does not assert that he is Secretary. I do note that the Shield's annual report filed with the Illinois Secretary of State on August 30, 2011 lists Thomas Sax as Secretary of Shield.

In short, all points raised in your September 14, 2011 letter are utterly devoid of merit. You have failed to address the required actions set forth in my September 11, 2011 letter. As counsel to Shield, you are hereby directed by SAG, the majority and controlling stockholder of Shield, to require your client to comply with its contractual obligations as set forth in the Notes and to (i) deliver to SAG the certificate(s) evidencing the 1151 additional shares of common stock of Shield that SAG now owns as a result of its partial conversion of Notes on August 8, 2011 and (ii) issue and deliver to SAG the new restated Note in the amount of

Peter G. Rush
September 16, 2011
Page 4 of 4

$483,912.50. You are further directed to take all actions necessary to cause Shield to issue notice of a special meeting of stockholders at 10:00 a.m. on Friday, September 30, 2011 at Butterfield Country Club in Oak Brook, Illinois as set forth in my September 11, 2011 letter as required by Shield's bylaws. You are further hereby directed not to take any action contrary to these directions.

Very truly yours,

John P. Collins

cc: Mike Weible
      Bryan Zingg
      Mark Sniegowski