# **EXHIBIT J**

# MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

September 22, 2011

**Lori E. Lightfoot**
Direct Tel +1 312 701 8680
Direct Fax +1 312 706 8559
llightfoot@mayerbrown.com

BY E-MAIL

John P. Collins
Collins & Collins
8 South Michigan Ave., Suite 1414
Chicago, IL  60603

Re:   Shield Acquisition Group LLC ("SAG")

Dear John:

As I advised you in our telephone call late in the day on September 19, 2011, we are the attorneys for James R. Donnelley. We are writing in response to your letter to Mr. Donnelley dated September 19, 2011.

Mr. Donnelley continues to be disappointed that, despite several communications from him inviting Mr. Weible to engage in a discussion of these matters, Mr. Weible refuses to engage in any substantive communications with him regarding any aspect of these matters and has elected to have SAG's counsel respond to Mr. Donnelley's September 13, 2011 letter. Moreover, Mr. Donnelley rejects any and all of the contentions made in your letter that he has engaged in any improper conduct at any time with respect to these matters. All of Mr. Donnelley's actions have been taken with a view toward preserving and growing the value of Shield Technology Corp. ("Shield") for all of its shareholders.

Inasmuch as you have elected to make substantive arguments regarding Mr. Donnelley's rights as a member of SAG, we are obliged to note here that we vigorously disagree with your contention that Section 5.2(a) of SAG's Limited Liability Agreement ("Agreement") does not apply in connection with the conversion of the Notes into common stock of Shield. Our view is that the consent of **all** of the members is required in connection with the conversion that has purported to have taken place. Neither Mr. Donnelley nor his brothers, Robert and David, have provided such consent or been asked to grant such consent. We do not believe that there is any misunderstanding by SAG on that fact.

The construction that you set forth in your letter is circular and, quite predictably, self-serving to the interests the Managers of SAG who would prefer to be able to operate without having to deal with its members. We are simply puzzled as to how your clients would not regard the disposition of the Notes as part of the recent purported conversion of them to be the disposition of SAG's investment in the Notes. Once converted by SAG's Managers exercising rights and powers, SAG no longer owned the Notes. Your analysis also conveniently skips over the language in the second sentence of 3(b) of the Agreement that states that the Units in SAG owned by Mr. Donnelley "represent an interest in the Shares and/or Notes (if any) acquired by

Mayer Brown LLP operates in combination with our associated English limited liability partnership
and Hong Kong partnership (and its associated entities in Asia) and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

John P. Collins
September 22, 2011
Page 2

the Company and interests therein will be allocated and assigned to the Members in accordance with their respective Capital Contributions." Such a clear allocation and assignment of interests to Mr. Donnelley (and to the other members of SAG) supports the construction that Section 5.2(a) that the Managers are not free to do as they please with the members' interests in the Notes.

Under these circumstances and given the language of the Agreement, we anticipate that a court would be quite receptive to the granting a full hearing to Mr. Donnelley (and potentially other members of SAG) that the right to consent expressly reserved by him in the Agreement is being ignored by its managers. The cost and delay that would result from any such hearing should obviously be avoided if possible, particularly if SAG is correct that it has information that Shield's management is not acting in the best interests of the company. (Information which Mr. Donnelley continues to seek from your client.) However, Mr. Donnelley does have serious, legitimate concerns that the Managers may have and continue to take actions that are exclusively reserved to the members under the Agreement.

Your letter claims that 83% of the Members have consented to the conversion. It is not clear to us why such consent was solicited if it was not required or why the consent of Mr. Donnelley and his brothers was not solicited by SAG. Mr. Donnelley knows of other members whose consent was also not given and is skeptical that consent from 83% of the members has been obtained.

You also told me that Mr. Donnelley has been removed as member of the Board of Directors of Shield at a recent meeting. Mr. Donnelley has not received notice of any special Board meeting nor is he aware of any Board meeting at which he or any other director have been removed. Mr. Peter Rush, outside counsel to Shield, advises us that he is not aware of any such Board meeting. As Mr. Donnelley takes his obligations as a Director of Shield most seriously, kindly clarify in writing why you believe that Mr. Donnelley is no longer a member of Shield's Board of Directors.

Mr. Donnelley believes that neither Shield nor SAG will benefit from a protracted dispute over the terms of the Agreement or the validity of SAG's or Shield's actions to date. Despite the tone of your letter, he persists in the notion that the better way to resolve these issues is through frank discussion between all of the persons directly involved and not by threatening letters or the institution of legal proceedings. Mr. Donnelley has a strong interest in the success of Shield and very much remains open to dialogue with Mr. Weible and the other managers about Shield and its current management.

Mayer Brown LLP

John P. Collins
September 22, 2011
Page 3

We look forward to a prompt response.

Sincerely,

Lori E. Lightfoot