IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHIELD TECHNOLOGIES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11-CV-7050 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| SHIELD ACQUISITION GROUP, LLC | ) | Magistrate Sheila Finnegan |
| | ) | |
| Defendant | ) | |

**PLAINTIFF'S RULE 12(b)(6) MOTION
TO DISMISS DEFENDANT'S COUNTERCLAIM**

Plaintiff Shield Technologies Corporation ("Shield"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby submits the following Motion to Dismiss the Counterclaim of Defendant Shield Acquisition Group, LLC ("SAG").

**Introduction**

1. SAG has brought a Counterclaim against Shield alleging a breach of contract claim on two Promissory Notes plus three separate claims for declaratory judgment that all revolve around the same issue: whether SAG undertook a proper conversion of Shield Promissory Notes into shares of Shield stock. Dismissal is appropriate because the Promissory Notes on their face and according to their plain terms required SAG to satisfy certain mandatory conditions precedent that SAG's own pleading[1] confirms never happened – namely, SAG's delivery of the Promissory Notes to Shield within five business days of its conversion notice on August 8, 2011. SAG's admitted failure to satisfy that unambiguous mandatory condition

---

[1] The pleading Shield refers to is SAG's Answer and Counterclaim which, although filed by SAG separately in this action, constitute a single pleading under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a).

precedent to conversion or otherwise perform under the agreements dictates that its Counterclaim must be dismissed.

**Factual Allegations in SAG's Answer and Counterclaim**

2. SAG purchased two Promissory Notes that had previously been issued by Shield on June 30, 2010. (Amended Counterclaim ("Amd. C-C"), ¶ 20.) The Promissory Notes are classic negotiable instruments. The Notes included a conversion feature whereby the holder of the Notes could convert a portion or all of the Notes into shares of Shield stock. (Amd. C-C, Ex. 2, ¶ 1.)

3. To accomplish such a conversion, however, the Promissory Notes spelled out a straightforward and common-sense conversion mechanism in Section 1(d). A mandatory condition precedent to conversion was delivery to Shield of the Promissory Notes. The Promissory Notes state:

> (d) <u>Conversion Mechanism</u>. . . . this Restated Note may be converted in full or in part by the Holder, by giving written notice (the "Conversion Notice") to the Company of the exercise of such right and stating the principal amount being converted and the name in which the shares of Common Stock are to be issued and the address to which such shares shall be delivered. The date on which the Holder delivers the Conversion Notice to the Company shall be the conversion date (the "Conversion Date"). **Within five business days after the Conversion Date, the Holder shall deliver to the Company Notes representing the principal amount so converted** and the Company shall deliver to the Holder a certificate or certificates evidencing the number of shares of Common Stock issuable upon the conversion in accordance with the terms of the Conversion Notice. The person in whose name the certificate is registered shall be treated as a stockholder of the Company on and after the Conversion Date.[2]

---

[2] In its Amended Counterclaim, SAG alleges that Shield breached the Promissory Notes by failing to deliver the shares and quotes the language above regarding delivery of the shares, but deliberately omits the language regarding SAG's mandatory obligation to deliver the Notes to Shield. (Amd. C-C, ¶ 39.)

(Amd. C-C, Ex. 2, ¶ 1(d) (emphasis added).)[3]

4.     Although SAG alleges in the Counterclaim that "SAG has fulfilled any and all of its obligations pursuant to the Amended Notes" (Amd. C-C, ¶ 65) because the Answer admits that SAG still possessed the Notes, "delivery" is impossible.[4]  In reality, SAG has never delivered the Notes after serving its Conversion Notice on August 8, 2011, much less within five business days of delivering the Conversion Notice as mandated by paragraph 1(d).

5.     Shield did not issue SAG any shares pursuant to SAG's fatally defective conversion attempts on August 8, 2011 (Amd. C-C, ¶ 37, Ex. 13) and on November 17, 2011. (Amd. C-C, ¶ 47, Ex. 15; 40, 51.)  As SAG's November 17, 2011 letter (Amd. C-C, Ex. 15) confirms separate and independent from the admission in Paragraph 83 of its Answer, SAG never tendered the Promissory Notes pursuant to either attempted conversion;  hence, its pleading confirms that it never satisfied one of the conditions precedent to conversion.

6.     Indeed, SAG's August 8, 2011 letter does not even mention delivery, while the November 17, 2011 letter affirmatively sets forth to rewrite the mandatory delivery mechanism clearly spelled out in the Notes:  "Upon receipt of the certificate evidencing the shares SAG shall deliver to STC the Convertible Note."  (Amd. C-C, Ex. 15.)  This writing further proves that SAG still had the Notes; and that by November 17, 2011, SAG apparently realized it had a mandatory obligation to deliver the Notes.  In the end, the undisputed fact remains that SAG **never** delivered the Notes.

---

[3]     Shield identifies other conditions SAG failed to fulfill in its Response to SAG's preliminary injunction motion.  The focus of the instant motion is on the condition of delivery, although Shield does note Count II seeks a declaratory judgment on a laundry list of items including that SAG's acquisition of the Notes and attempted conversion complied with all federal and state securities laws. However, the Counterclaim contains no factual allegations of the disclosures or representations purportedly made, and seems to be a demand for relief without factual support.

[4]     The response to Paragraph 83 of the Amended Complaint states:  "SAG admits that it is in possession of the Amended Notes."  (Docket No. 48.)

## Argument

### Legal Standard

7. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Savage v. Pepsi-Cola Gen. Bottlers*, No. 09 C 984, 2009 U.S. Dist. LEXIS 47848, at *2 (N.D. Ill. June 8, 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

8. In a Rule 12(b)(6) motion, "[w]here the plaintiff's cause of action arises out of a contract which has been attached to the complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate." *Janivo Holding, B.V. v. Continental Bank, N.A.*, No. 91-C-7728 1992 U.S. Dist. LEXIS 17657, at *7 (N.D. Ill. Nov. 18, 1992) (*quoting Goodman v. Board of Trustees of Community College*, 498 F. Supp. 1329, 1337 (N.D. Ill. 1980)).

### SAG's Breach of a Condition Precedent and Non-Performance Preclude Enforcement of the Conversion Provision

9. A promissory note, like any other contract, cannot be enforced by a party that failed to fulfill a condition precedent to that contract. *See*, *e.g. Wilson Sporting Goods Co. v. Penn Partners*, No. 03-C-5236, 2004 U.S. Dist. LEXIS 21883, at *15-19 (N.D. Ill. Oct. 27, 2004) (granting summary judgment to lessor that no requirement to recognize lessee's exercise of an option existed because lessee failed to execute and deliver a final contract attached to the option agreement which was a condition precedent to exercise of the option); *Willbros Eng'rs, Inc. v. MasTec N. Am., Inc.*, No. 03-CV-436, 2006 U.S. Dist. LEXIS 38810, at *17-19 (N.D.

Okla. June 8, 2006) (subcontractor failure to comply with condition precedent of releasing claims prior to payment from contractor excused contractor of obligation to make payment).

10. SAG's admitted failure to deliver the Notes is just such a condition precedent precluding enforcement of the conversion provision. Moreover, the failure to make delivery pursuant to the terms of the Promissory Notes, whether or not the provisions are deemed conditions precedent, renders SAG unable to enforce those agreements in this action. *See*, *e.g. Kilaita v. Wells Fargo Home Mort.*, No. CV11-00079, 2011 U.S. Dist. LEXIS 142524, at *14 (N.D. Cal. Dec. 12, 2011) (granting defendant's motion to dismiss claims for breach of contract and declaratory relief involving promissory note and stating "[b]ecause plaintiffs are in breach of contract themselves and have provided no excuse for their non-performance, Plaintiffs cannot attempt to enforce the contract against Wells Fargo."); *H. L. Miller Mach. Tools v. Davenport Mach.*, No. 97-C-5012; 1998 U.S. Dist. LEXIS 9540, at *13-14 (N.D. Ill. June 17, 1998) (breach of contract claim dismissed with prejudice because plaintiff had no claim under the plain and ordinary meaning of the contract).

11. Furthermore, at this juncture SAG *cannot* perform the condition precedent under the terms of the Promissory Notes. The Notes provide for a Demand Date of November 17, 2011, and further that, if the Notes are paid off after the Demand Date, SAG shall have ten days to convert the Notes into shares of Shield stock. (Amd. C-C, Ex. 2, p. 2 and ¶ (v).) On November 18, 2011, Shield gave SAG notice of the full payoff of the Notes. At no time within the ten-day period after November 18, 2011 did SAG deliver the Notes to Shield. Thus, any obligation of Shield under the Notes has been extinguished by Shield's payment and SAG's continued non-performance. *See* REST. (SECOND) OF CONTRACTS, § 225(2) (1981) ("Unless it

has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur").

12. Any possible contention SAG need not deliver the Promissory Notes to convert is further undermined by the fact that the Notes are classic negotiable instruments, and as such are freely transferable and exerciseable by a holder in due course. *See* 810 ILCS 5/3-302 (2012); *Hatton v. Money Lenders & Assocs., Ltd.*, 127 Ill. App. 3d 577, 580-82 (1st Dist. 1984) (granting summary judgment to holder in due course of promissory note on issue of whether holder was entitled to enforce the note). Shield cannot perform without delivery of the Notes when those Notes could be transferred freely to a third party in a private transaction.

13. Without the proper exercise of the conversion – physical delivery of the Notes – SAG has no claim to voting "control" over Shield, because, as SAG admits in its Counterclaim, there is a Voting Agreement which provides the non-SAG shareholders in Shield voting control over Shield so long as SAG holds the GEPT Note. (*See* Amd. C-C, p. 2, ¶¶ 35, 82, Ex. 12 (Voting Agreement, §§ 1, 3 (providing that the Nelson shares shall be voted as directed by current Shield Vice Chairman Tom Sax and"*[f]or avoidance of doubt, for so long as GEPT is holding Notes* or the Company may cause GEPT to acquire Additional Notes under the NPA at a future date, this agreement shall be in full force and effect" (emphasis supplied)))).) If the purported conversion fails, as Shield contends and the clear language of the Promissory Notes demonstrates, then the predicate to all SAG's claims that conversion was proper and SAG "controls" Shield fails as well.

14. Because SAG has not fulfilled the mandatory conditions precedent under the Promissory Notes as established by its own pleading in this matter, SAG has failed to state a

- 7 -

claim based on Shield's refusal to recognize SAG's fatally defective conversion attempts, and the Counterclaim should be dismissed.

## **Conclusion**

For all the foregoing reasons, plaintiff Shield Technologies Corporation respectfully requests that this Court grant its Rule 12(b)(6) motion and dismiss the Counterclaim of defendant Shield Acquisition Group, LLC.

Dated: March 29, 2012

Respectfully submitted,

SHIELD TECHNOLOGIES CORPORATION


By:     /s/ Peter G. Rush
        One of its attorneys

Peter G. Rush
Robert R. Brown
Sangmee Lee
K& L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
312.372.1121