Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | Sheila Finnegan |
|---|---|---|---|
| **CASE NUMBER** | 11 C 7050 | **DATE** | 10/15/2012 |
| **CASE TITLE** | Shield Technologies Corporation vs. Shield Acquisition Group, LLC | | |

**DOCKET ENTRY TEXT**

Defendant's Motion to Compel Execution of Settlement Documents [158] is denied for the reasons set forth in the Statement section of this Written Opinion.

■[ For further details see text below.]

Mailed notice.
*Copy to judge/magistrate judge.

## STATEMENT

This lawsuit involved a dispute over the attempted conversion by Defendant Shield Acquisitions Group, LLC ("SAG") of two promissory notes into common stock of Plaintiff Shield Technologies Corp. ("Shield") in order to gain control over Shield. On May 9, 2012, the parties and all concerned individuals, including Samuel W. ("Sam") Sax, Shield's President and CEO and Chairman of the Board of Directors, and Sam's son Thomas ("Tom") Sax, reached a settlement agreement. (Doc. 158-1, at 17-19). That same day, the settling parties summarized the terms of the agreement in open court before Judge John W. Darrah. They stated that the agreement as summarized was effective immediately even though it would later be reduced to writing, and that Judge Darrah retained "full authority to enforce the agreement[.]" (*Id*. at 17). They further stated:

> To the extent, your Honor, that we cannot come to an actual written agreement, you've heard the terms. We will present any dispute as to what the intent was to you, and you will then come to an agreement as to what you believe is the -- was the agreement, is the proper agreement.
>
> The settlement agreement, as we know right now, is being read into the record, and everyone agrees that you have full authority to enforce the agreement against the parties and all of these individuals that we have listed above.

(*Id*.).

Written settlement documents have now been prepared but Sam Sax refuses to sign them unless certain changes are made to them.[1] SAG responded by filing the instant motion to enforce the settlement, which Judge Darrah referred to this Court for resolution. (Doc. 161). During the motion hearing before this

| STATEMENT |
|---|

Court on October 10, 2012, Sam argued: (1) the duration of the indemnification provision should be 2 years rather than 5 years; and (2) the release language should be narrowed so that only claims "arising out of or connected with the litigation" are released. Sam also argued that he should not have to sign the documents until he has been allowed to review certain corporate financial records. This Court rejects Sam's arguments concerning the indemnity provision and financial records, but agrees that the release, as currently drafted, could be construed to be broader than what the parties agreed when they were before Judge Darrah. Therefore, the Court denies the motion to compel Sam to sign the settlement documents in their current form.

## DISCUSSION

There is no dispute that this Court has jurisdiction to implement and enforce the parties' settlement agreement. *See Schulte v. Fifth Third Bank*, No. 09 C 6655, 2012 WL 2254197, at *2 (N.D. Ill. June 15, 2012) (citing *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 411 (7th Cir. 2000) (recognizing that a district court has jurisdiction to enforce terms of a settlement agreement if the settlement approved by the court provided that the court retained jurisdiction to enforce the terms of the settlement)). The Court thus turns to the specific terms at issue.

1. **Duration of Indemnity**

When the settling parties appeared before Judge Darrah on May 9, 2012 to summarize the settlement terms, they stated that Sam Sax (and Tom Sax and Ray Drymalski) would indemnify Shield and SAG under certain circumstances. Specifically, these individuals were to provide a list of all agreements entered into by them. With respect to any non-ordinary course and non-disclosed agreements, Shield had the right to reject those agreements and if so, Sam Sax (and the others) would be personally liable for any non-disclosed agreements. The settling parties stated that the "Saxes shall enter into an indemnification agreement with Shield for these matters." (Doc. 158-1, at 16).

SAG argues that there was no time limitation on the indemnity for good reason. The Saxes had refused to turn over control of Shield and during that period had the ability to bind Shield without SAG's input. According to SAG, any undisclosed written contract entered into by the Saxes could potentially be enforced by the other party to the contract during the 10-year statute of limitation period under Illinois law. (Doc. 158 ¶¶ 18, 19). SAG states that it made a "major concession" when it agreed to limit the indemnification to a 5-year period in the written settlement documents. (*Id*. ¶ 19). Tom Sax has agreed to this but Sam has not. He refuses to sign the settlement documents unless they reflect a 2-year period.

It is too late for Sam to insist on a 2-year time limitation on the indemnity. When the settling parties summarized their agreement before Judge Darrah, they did not place any time limit on the indemnity and SAG says this was intentional. SAG has now agreed to limit the indemnity to a 5-year period. This Court sees no basis for Sam refusing to sign the settlement documents because they do not provide for a 2-year limit on the indemnity.

2. **Financial Records**

On May 9, 2012, the parties informed Judge Darrah that they "had agreed that the SAG board would engage an auditor to perform the 2011 audit, and it will be done as expeditiously as possible, with a copy to the Saxes." (Doc. 158-1, at 17). The written settlement agreement states: "As soon as possible, Shield shall immediately permit an audit of its financial information/documentation by CliftonLarsonAllen LLP and the

| STATEMENT |
|---|

audit is anticipated to be complete within 60 dates (sic) after Closing. A copy of the audit shall be made available to Tom Sax and Sam Sax upon completion." (Doc. 158-2, at 9). In its motion to compel, SAG states that the auditor cannot complete the audit until execution of the settlement documents and the closing of the transaction, which will involve the delivery of the shares of common stock of Shield to SAG. (Doc. 158 ¶ 13).

This Court rejects Sam's argument that he may insist on receiving financial records as a condition to signing the settlement documents. First, the settlement agreement only allows for him to receive a copy of the 2011 audit after it has been completed. To the extent that Sam seeks any other financial records, he is not entitled to them under the settlement agreement.[2] Second, the parties did not agree that Sam would be allowed to review the results of the 2011 audit before signing the settlement agreement. Indeed, the agreement does not allow Sam to back out of the settlement if he does not like the results of the audit. Instead the agreement merely entitles Sam to a copy of the 2011 audit after it has been completed. It is too late for Sam to now insist that the audit be completed *before* he signs the settlement documents. If after the closing, SAG refuses to obtain and provide to Sam with the 2011 audit within a reasonable time, Sam is free to seek to enforce this term of the settlement agreement.

**3.     Scope of the Release**

When summarizing the settlement agreement to Judge Darrah, the settling parties represented that Shield, SAG, Sam Sax, Tom Sax and other concerned individuals would be executing releases. (Doc. 158-1, at 8). Judge Darrah asked the parties to confirm that those releases would be "broad, general releases as to all claims arising out of or in any way connected with this lawsuit," and counsel all agreed. (*Id*. at 33). SAG has since proposed the following release language:

> Sax hereby releases the SAG Group and Shield from and against any and all claims, demands, actions, causes of action, suits and debts, accounts, damages, claims for attorneys' fees and costs, and all claims, at law or in equity, from the beginning of the world until the date of the execution of this agreement, for any and all actions alleging that the SAG Group or Shield is liable to Sax for any breach of contract, fraud, misrepresentation (negligent, fraudulent, or otherwise), account stated, quantum meruit, unjust enrichment, violations of any and all federal and/or state securities laws, as well as any violations of any federal, state, local or municipal statute, law or any tort or common law action, as well as any and all matters which were raised or which could have been raised concerning the facts, transactions, occurrences, actions, representations, conveyances, transfers, including: (a) any and all matters relating to the procurement of any waiver of right of first refusal acquired by the SAG Group to purchase any shares of Shield; (b) any and all matters relating to SAG's purchase of any shares of Shield; (c) any and all matters relating to the Board of Directors of Shield; (d) any and all matters relating to the SAG Group's acquisition of the amended notes; and/or (e) any and all matters relating to the SAG Group's attempted conversion of the amended notes or any other issue that are or could have been the subject of the Lawsuit. Sax understands and agrees that by signing this Release, he is forever releasing every conceivable claim he possesses against the SAG Group and Shield as defined above.

(Doc. 158-3, at 44). Sam objects that this language is overly broad, requiring him to release "every known and unknown claim Sax could possibly have against SAG or Shield." (Doc. 167, at 4). SAG insists that Sax is not being asked to release unknown claims or anything else beyond the scope of Judge Darrah's statement at the May 9, 2012 hearing, and urges that he be required to sign the agreement as is. (Doc. 165 ¶ 5).

## STATEMENT

This Court agrees that the scope of the proposed release is ambiguous, and declines to compel Sam Sax to sign the settlement agreement in its current form. As noted, the release contemplated by the parties, as summarized by Judge Darrah, was to encompass only claims "arising out of or in any way connected with this lawsuit." (Doc. 158-1, at 33). The release language quoted above, however, appears to be broader than this, covering (1) "any violations of federal, state, local or municipal statute, law"; or (2) "any tort or common law action"; or (3) any and all matters which were raised or which could have been raised concerning the facts, transactions, occurrences, actions, representations, conveyances, transfers." (Doc. 158-3, at 45). None of these statements clearly reflects that the claims are limited to those that were raised, or could have been raised, *in this lawsuit*. In light of this, SAG's motion to compel Sam Sax to execute the settlement documents as currently drafted is denied.

1  While SAG's motion to compel states that Tom Sax is also unwilling to sign the settlement documents for various reasons, this Court was informed during the hearing on October 10, 2012 that Tom Sax is now willing to sign the documents as drafted.

2  As a minority shareholder of Shield, Sam may be able to request to inspect the corporation's books and records under Delaware Corporation Law.